UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LINDA G. ROSSMAN,

Plaintiff,

v.

MIGUEL INIGUEZ, et al.,

Defendants.

Case No. 19-cv-00391-RS

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This ERISA action arises from an alleged breach of fiduciary duty by Defendants Miguel Iniguez and Felipe Hernandez while acting as Trustees of the UA Local 355 Health and Welfare Trust Fund ("Health and Welfare Trust Fund") and the Northern California/Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Trust Fund ("JATC Trust Fund") (collectively, the "Trust Funds"). Plaintiff Linda Rossman, who is also a trustee of these same funds, moves for preliminary injunction. For the reasons set forth below, this motion is denied.

## II. BACKGROUND

### A. Procedural Background

In May 2017, Iniguez and Hernandez, along with several other individuals and entities, filed *United Association of Journeyman & Apprentices of the Plumbing and Pipe Fitting Industry, Underground Utility/Landscape Local Union No. 355 v. Maniglia Landscape, Inc.*, No. 17-cv-3037-RS. The operative complaint in *Maniglia* comprises six claims for relief. Two of these

claims are advanced by Iniguez and Hernandez, namely the Fourth and Fifth Claims. The Fourth Claim alleges the defendant employers failed to pay fringe benefits as required under Section 301 of the Labor Management Relations Act ("LMRA") and Sections 502 and 515 of ERISA. The Fifth Claim seeks an audit of these employers pursuant to the same statutes.

Rossman, in her capacity as a co-trustee of the Trust Funds, filed the present action in January 2019 alleging, *inter alia*, that Iniguez and Hernandez acted without authority and in violation of ERISA in bringing the *Maniglia* lawsuit. Rossman's case was subsequently related to *Maniglia*. She now moves for a preliminary injunction prohibiting Iniguez and Hernandez from prosecuting their claims in *Maniglia*, retaining legal counsel to pursue legal actions, or acting as ERISA trustees in any way other than as part of the Board of Trustees.

**B. Factual Background**

Both the Health and Welfare Trust Fund and the JATC Trust Fund are governed by written trust documents which set forth the powers, duties, and responsibilities of the governing Board of Trustees, as well as the process by which trustees can exercise powers.

1. The Health and Welfare Trust Fund

The Health and Welfare Trust Fund is established and governed by a written trust agreement, the UA Local No. 355 Health and Welfare Trust Agreement ("Health and Welfare Trust Agreement"). The fund itself provides health and welfare benefits, including medical benefits, to eligible employees and their families. Contributions to the fund are paid by participating employers and depend upon the number of hours worked by the employees. The Health and Welfare Trust Agreement also describes the powers of the Board and individual trustees.

First, it states: "Neither the Board of Trustees nor any individual Trustee shall have powers, duties or liabilities with respect to the Trust Fund except as specified in this Agreement." Rossman Decl., Ex. D § 2.04. The Board of Trustees is made up of two Employer Trustees and two Employee Trustees. Iniguez and Hernandez are the Employee Trustees and Rossman is one of the two Employer Trustees. Furthermore, the Board may "act only as a body at regular or special

meetings, or by the written assent of all Trustees." *Id.*, Ex. D § 4.2.01. If the Board is unable to reach an agreement regarding a "matter within their power" a Trustee may demand arbitration of the issue. *Id.*, Ex. D. § 4.4.02; *see also id.*, Ex. D § 4.3.01.

The powers of the Board include (1) collecting, receiving, holding, and disbursing "all sums of money which are payable to or by the Trust Fund" and establishing reserve funds; (2) employing any person or entity necessary to administer the trust, including legal counsel, and (3) pursuing legal action on behalf of the fund. *Id.*, Ex. D § 4.4.08. The Health and Welfare Trust Agreement specifically confers the authority to take legal action against an employer who is delinquent in paying the required contributions on the Board as a whole: "If any Employer is delinquent in the making of Employer Contributions or the payment of any other obligations to the Trust, the Board of Trustees may take such legal or other action as they see fit to enforce collection." *Id.*, Ex. D § 3.07.

### 2. JATC Trust Fund

The written agreement governing the JATC Trust Fund is the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund Trust Agreement ("JATC Trust Agreement"). This fund provides for education and training for journeymen and apprentices in landscape and underground utility work. Employers pay contributions into the fund based on the number of employee hours worked. Like the Health and Welfare Trust Agreement, the JATC Trust Agreement provides: "Neither the Board of Trustees nor any individual Trustee shall have any powers, duties or liabilities with respect to the Trust or the Fund except as specified in this Agreement." Rossman Decl., Ex. E § 2.2. The Board "may take actions affecting the Trust only as a Board" and such actions must be taken "at a regular meeting, at a special meeting" or based on a writing in which all Trustees concur. *Id.*, Ex. E § 6.1.

The Board of this fund is made up of four Employer Trustees and four Employee Trustees. The powers of the board include (1) collecting, receiving, suing for, and holding payments due to the fund by individual employers; (2) entering into contracts; and (3) employing consultants, legal personnel, and other persons on behalf of the fund. Once again, if the board deadlocks on a

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 19-cv-00391-RS

3

particular matter, it "shall arbitrate the decision." *Id.*, Ex. E § 7.1.

3. Compliance with the Written Trust Agreements

As explained above, Iniguez and Hernandez filed *Maniglia* in May 2017. According to Rossman, they did not consult with her or obtain her consent before initiating the *Maniglia* action even though she was a trustee of both Trust Funds. Rossman Decl. ¶ 5-9. Furthermore, the Boards of these two funds did not authorize the retention of counsel to prosecute the *Maniglia* case. In January 2018, after the case was underway, Iniguez asked the Board of Trustees of the Health and Welfare Trust Fund to help the "Union," that is UA Local 355, pay its legal fees in the *Maniglia* case. *Id.* ¶ 9; *id.*, Ex. A. This request was not approved.

### III. LEGAL STANDARD

To obtain preliminary relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has clarified, however, that courts in this Circuit should continue to evaluate the likelihood of success on a "sliding scale." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) ("[T]he 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). Under the sliding scale test, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided that the plaintiff also satisfies the other preliminary injunction requirements. *Id.* at 1134-35 (quotation omitted).

### IV. DISCUSSION

**A. Likelihood of Success on the Merits**

Section 402 of ERISA requires that every employee benefit plan "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Section 404 further requires that fiduciaries discharge their duties "in accordance with the documents and instruments governing the plan." *Id.* § 1104(a)(1)(D). Rossman argues that, because Iniguez and Hernandez

failed to obtain the required Board of Trustee approval before filing a contribution action, they are in breach of their fiduciary duties. *Cf. Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 123-24 (3d Cir. 2002) (citing *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)) (affirming dismissal for lack of standing because the plaintiff trustees "were not authorized under the trust agreements to bring suit without either receiving the approval of a majority of the trustees or employing the arbitration procedures").

Iniguez and Hernandez offer several rejoinders. First, they argue the Order Granting in Part and Denying in Part Motions to Dismiss, issued in *Maniglia* on October 26, 2017, forecloses this argument. That order rejected the argument that Section 302 of ERISA, which requires that employers and employees be equally represented in trust fund management, barred UA Local 355 Trust Fund Trustees from suing independently of the Board. The order specifically stated that "whether the Local 355 Trustees are authorized by the Board of Trustees is irrelevant because Section 301 does not explicitly place limitations on which parties may sue to enforce" the collective bargaining agreement. *Maniglia*, Dkt. 55 at 8. The order also rejected the argument that individual trustees are not fiduciaries within the meaning of ERISA. Finally, the Court declined at that time to adopt the position that the Trustees' failure to comply with the procedures set forth in the Trust Agreements necessarily prevented them from obtaining relief from the courts. *Id.* at 9.[1] Contrary to Iniguez's and Hernandez's position, the October 2017 order did not definitively determine whether they had breached their fiduciary duties by pursuing litigation. It merely held that they were not barred from proceeding past the motion to dismiss stage.

Next, Iniguez and Hernandez argue federal law expressly authorized them to bring the *Maniglia* action, and that the plan documents must be interpreted in light of this express grant of authority. In particular, Section 502 of ERISA authorizes any "participant, beneficiary, or

---

[1] The order specifically stated: "There is no indication in the language quoted from the Trust Agreements that lack of compliance with such procedures bars a judicial order compelling an audit." None of the parties to *Maniglia* discussed *Kilkenny* or *Alfarone* in their briefing on the motion to dismiss, accordingly these cases were not considered.

fiduciary" to "enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). In their view, any restriction on an individual fiduciary's ability to file suit under this section must be disregarded as inconsistent with ERISA. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1492, 1493 (9th Cir. 1990) (explaining that "the role of the trustees is generally defined by the trust documents, to the extent these documents are consistent with the provisions of ERISA"); *see also Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568-69 (1985) (holding that "trust documents cannot excuse trustees from their duties under ERISA" and "trust documents must generally be construed in light of ERISA's policies").

Iniguez and Hernandez are correct that, where a plan agreement conflicts with a fiduciary's obligations under ERISA, the fiduciary must disregard the plan agreement. The requirement that members of the Board of Trustees seek approval from the Board and arbitrate internal disagreements before taking unilateral action is not, however, inconsistent with Section 502 of ERISA. Indeed, other circuits have explicitly held that trustees are *required* to exhaust administrative processes set forth in plan agreements *before* seeking relief from the federal courts. *See, e.g.*, *Kilkenny*, 288 F.3d at 123-24; *Alfarone*, 788 F.2d at 79. Although Iniguez and Hernandez attempt to distinguish *Kilkenny* by arguing the written trust agreements at issue here do not strictly *require* arbitration of disputes, this argument is unpersuasive. The more plausible reading of the agreement is that the Boards must act as a whole, and that trustees who wish to take a particular action without board approval must first resort to arbitration.

Finally, Iniguez and Hernandez argue Rossman has essentially conceded that a trustee can sue without Board approval because she did not obtain permission from the Boards of the Health and Welfare and JATC Funds before filing this action. Of course, it would be futile to require Rossman to obtain the consent to sue from the very same trustees she intends to sue. In any event, this argument is a double-edged sword. While Iniguez and Hernandez hope to show that trustees are *not* required to follow the procedures in the Trust Agreements before filing suit, their argument just as easily supports the conclusion that all three trustees are acting without authority and should

be dismissed from their respective cases. Ultimately, Rossman's conduct in filing this action against her fellow trustees is likely distinguishable from Iniguez's and Hernandez's decision to pursue the *Maniglia* action, but even if it is not, her breach of fiduciary duty argument is still persuasive.

**B. Irreparable Harm**

While Rossman makes a strong showing on the likelihood of success on the merits, she fails to carry her burden with respect to irreparable harm. She advances three primary arguments with respect to the irreparable harm requirement. First, she argues that irreparable harm may be presumed. *United States v. City of Santa Monica*, No. CV 08-2695 GW, 2008 U.S. Dist. LEXIS 54877, at *6-7 (C.D. Cal. Apr. 28, 2008) (quoting *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992) ("In statutory enforcement cases where the government has met the 'probability of success' prong of the preliminary injunction test, we presume it has met the 'possibility of irreparable injury' prong . . . ."). This presumption, however, applies to enforcement actions by governmental entities. Rossman is not a governmental entity, accordingly this rule has no bearing on her ability to establish irreparable harm.

Second, Rossman argues Iniguez and Hernandez undermined her ability to fulfill her own duties under ERISA by usurping the power of the Boards of Trustees and interfering with the Boards' abilities to carry out their usual functions. In particular, Rossman argues the *Maniglia* action has interfered with the Boards' abilities to review audits, consult legal counsel regarding potentially delinquent contributions, enter into settlements and payment plans, and sue for delinquencies. Finally, Rossman contends, Iniguez's and Hernandez's decision to pursue litigation negatively affects the reputation of the Health and Welfare and JATC Boards by undermining their authority and creating the impression Iniguez and Hernandez are in control of the Trust Funds.

These arguments are similarly unavailing. First, despite Rossman's contention that Iniguez and Hernandez have interfered with the Boards' ability to function by pursuing the *Maniglia* action, there is no indication that the Boards have been disbanded or are otherwise unable to meet and conduct their usual business. Furthermore, both Iniguez and Hernandez sit on the relevant

Boards of Trustees and effectively have veto power, by virtue of the unanimity requirements, regardless of whether they continue to pursue the *Maniglia* action. Accordingly, barring them from pursuing the *Maniglia* action will not end the stalemate on the Board of Directors. Finally, Rossman's vague assertions of reputational injury to the Board of Trustees is too amorphous to support a finding of irreparable harm. In sum, Rossman has not carried her burden to show irreparable injury. Accordingly, the motion for preliminary injunction is denied.

## V. CONCLUSION

For the reasons set forth above, the motion for preliminary injunction is denied.

**IT IS SO ORDERED**.

Dated: July 22, 2019

_____
RICHARD SEEBORG
United States District Judge